UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VICTOR BRYANT,

              Plaintiff,              Case No. 2:14-cv-14

v.                                          Honorable Gordon J. Quist

MITCH PERRY, et al.,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Victor Bryant, a state prisoner currently confined at the Central Michigan Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Mitch Perry and Corrections Officer S. Int-Hout. During the pertinent time period, Plaintiff was confined at the Newberry Correctional Facility (NCF) and Defendants were employed at NCF.

Plaintiff's complaint alleges that on June 30, 2011, his personal property was damaged by a Corrections Officer during a search. Plaintiff received a misconduct ticket for the damage and was found guilty on July 7, 2011. Plaintiff filed an appeal, which was denied on October 7, 2011. On December 14, 2011, Plaintiff submitted a request for judicial review challenging the guilty finding. Plaintiff's request was returned to him with instructions to pay an initial partial filing fee. On January 23, 2012, Plaintiff gave Assistant Resident Unit Supervisor Canfield an unsealed envelope containing the requested filing fee and the pleadings. On approximately January 24 or 25, 2012, Defendant Perry asked Plaintiff why he felt the need to blame prison officials for his own misconduct. Defendant Perry also stated, "Well do you think crying to some court about the way I run my facility is going to change things around here? You can't be that stupid." Plaintiff responded, "Yeah, whatever," and walked away. As Plaintiff was leaving the area, he heard Defendant Perry say "Comments like that lead to more hot water."

On January 26, 2012, Plaintiff was placed in the control center due to an attempted assault on Plaintiff which occurred while he was in the recreation yard. While Plaintiff was in the control center, Corrections Officer Marshall packed up Plaintiff's personal property and secured it in the Assistant Resident Unit Supervisor's office. The pack-up was witnessed by Corrections Officer Mersnick. On January 27, 2012, at approximately 7:30 a.m., Defendant Int-Hout issued a misconduct ticket on Plaintiff, claiming that he packed up Plaintiff's property and found a weapon.

In the misconduct ticket, Defendant Int-Hout claimed that Plaintiff intentionally had his shaving/cosmetic bag locked up in his duffle bag in order to conceal a homemade weapon. Plaintiff was immediately transferred to the Alger Correctional Facility (LMF) and was placed in administrative segregation. Plaintiff was found guilty of the misconduct ticket following a hearing on February 7, 2012. Plaintiff attaches a copy of the hearing report as an exhibit to his complaint. In the reasons for findings, Hearing Officer L. Maki stated:

> On 1/27/12 it was discovered that the prisoner had a 6½ inch piece of metal flat stock, sharpened to a point on one end. This item could be used to cause or threaten to cause physical harm to another person. Prisoner knew he had the weapon as the weapon was hidden inside of his cosmetic kit that had been in the prisoner's locked locker before his property was placed into a dufflebag by a unit officer. Prisoner acknowledges that his footlocker was locked but claims that the rest of his property, including his cosmetic bag, was not secured in a timely manner by unit officers as his property was not packed for 11 hours. Even if the prisoner's allegations are correct, which they are not, prisoner failed to rebut the presumption of possession contained in PD 03.03.105 F. "A prisoner is presumed to be in possession of an item found in an area over which the prisoner has control and for which s/he has been assigned responsibility even if the prisoner is not present. The prisoner shall have the burden of proof in rebutting this presumption at a misconduct hearing." First, the prisoner's property was not left unsecured for 11 hours in his cube. It was packed immediately, locked and secured in the [Assistant Resident Unit Supervisor] office by Unit Officer Marshall when the prisoner had requested protection. Marshall's statement is credible as it is consistent with the information provided by Mersnick and with the information contained in the misconduct report as the reporting staff member indicated that he was conducting a "packup" on the prisoner's property that was contained in a "locked dufflebag" in the "[Assistant Resident Unit Supervisor] office." Second, the cosmetic bag was in the prisoner's locked footlocker when it was placed in the dufflebag by the officer. None of the prisoner's property was unsecured outside of the footlocker. Third, since the prisoner was having problems and lived in a dorm setting, it would be improbable that the prisoner would have left something of value - his cosmetic bag - unsecured. It makes sense that it would be in a locked locker. Fourth, it would be improbable that another prisoner would have placed the weapon inside of the prisoner's property as the

> weapon has a great deal of value within the prison system. It would be unlikely it would be given away or used to "set up" the prisoner as there would be cheaper ways to accomplish that. Fifth, prisoner did not present his claims in a credible manner at the hearing. He seemed to focus more on "technicalities" than anything else. Sixth, prisoner believed his life was in danger and requested protection. His fear would explain why he would have a weapon. Reporting staff member factual and is credible as to what was found and supported by information provided by other staff members and common sense. Charge upheld.

(Docket #1-3, p. 19 of 45.)

Plaintiff submitted a request for rehearing on his misconduct conviction, which was denied on February 8, 2013. In the denial, Hearings Administrator Matt Young found that there was:

> [S]ufficient competent, material and substantial evidence on the record for the hearing officer to uphold the charge. The prisoner was afforded all requirements set forth in policy and procedure and no violation of those requirements is found to have occurred. No bias is apparent and there is insufficient evidence presented on appeal that would support granting a rehearing on the matter.

(Docket #1-4, p. 13 of 13.)

Plaintiff states that as a result of the misconduct conviction, he was reclassified to administrative segregation and that Warden Catherine Bauman ordered that 120 disciplinary credits be taken from Plaintiff. On March 8, 2012, Plaintiff received a copy of the original personal property receipt for his property, signed by Resident Unit Officer T. Flatt, which makes no mention of any homemade weapons. (Docket #1-3, p. 30 of 45.) On March 19, 2012, Plaintiff sent an addendum to the Hearings Administrator, which included this property receipt, and argued that this evidence supported his request for a rehearing. Plaintiff also sent a letter of complaint to MDOC Regional Prison Administrator Jerri Ann Sherry. Plaintiff asserts that he did not receive the denial of his request for rehearing until February 13, 2013.

Plaintiff asserts that Defendants' conduct violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendant Int-Hout retaliated against him when he wrote a misconduct ticket on Plaintiff for having a homemade weapon. However, as noted above, Plaintiff received a hearing and was found guilty of the misconduct ticket. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). Therefore, Plaintiff's retaliation claim is properly dismissed.

Plaintiff also claims that Defendants' conduct violated his rights under the Eighth Amendment. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is likely that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

To the extent that Plaintiff is asserting that his misconduct conviction and subsequent placement in administrative segregation violated his procedural due process rights, such a claim lacks merit. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not

protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Here, Plaintiff clearly has failed to suggest that his segregation imposes an atypical and significant hardship. In fact Plaintiff fails to allege any specific facts in support of such a finding. Therefore, Plaintiff's placement in administrative segregation does not implicate Fourteenth Amendment due process.

Moreover, under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that Plaintiff was guilty of the misconduct charge was supported by the record. As noted above, the Hearing Officer set forth detailed reasons for his finding in the hearing report. It is clear that Plaintiff received due process of law, and that he

cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Mass. Inst., Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff has failed to show that his constitutional rights were denied.

Finally, Plaintiff asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))

(holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims.  For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his placement in administrative segregation.  *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal).  Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims.  Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied.  *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").  Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in the major misconduct proceedings.  Consequently, Plaintiff's substantive due process claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  August 13, 2014             /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE